# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

### DEWEY MIN. CO. v. MILLER et al.

#### (Circuit Court, S. D. California. June 12, 1899.)

**1.** JURISDICTION OF FEDERAL COURTS — FEDERAL QUESTION — AVERMENTS OF BILL.

When the jurisdiction of a federal court is invoked on the ground that the suit arises under the laws of the United States, such facts must be alleged in the bill as to make it affirmatively appear to the court that the proper determination of the suit really and substantially involves a dispute or controversy as to the effect or construction of such laws.[1]

**2.** SAME — SUIT TO DETERMINE RIGHTS IN MINING CLAIMS.

A suit in equity to determine conflicting claims under mining locations on public lands is not within the jurisdiction of a federal court, as involving the construction or effect of the mining laws of the United States, where, so far as appears from the averments of the bill, the only controversy between the parties may be over questions of fact.

On Demurrer to Bill.

Anderson & Anderson, for complainant.

C. C. Wright, Wm. H. H. Hart, L. L. Cory, J. A. Hannah, and Bicknell, Gibson & Trask, for defendants.

ROSS, Circuit Judge. The application of a few well-settled principles of law to the bill in this case will readily determine the question of jurisdiction raised by the demurrer filed thereto. That the bill in a suit in equity brought in a circuit court of the United States must affirmatively show the jurisdiction of the court over the case is thoroughly well settled. This must be done by such a clear statement of the facts that the court can see that it has jurisdiction. It is not enough, nor, indeed, proper, for the complainant to allege such jurisdiction as a legal conclusion; but such facts must be stated as will enable the court to draw the legal conclusions, and de-

---

[1] As to averments necessary to show the existence of a federal question, see section 3 of note to Bailey v. Mosher, 11 C. C. A. 309, and subdivision II. of note to Montana Ore-Purchasing Co. v. Boston & M. Consol. Copper & Silver Min. Co., 35 C. C. A. 7.

termine the question of jurisdiction in the affirmative. In the present case the jurisdiction of the court is sought to be maintained upon the ground that the complainant's cause of action arises "under the laws of the United States." In such cases it must be made to appear that the proper determination of the suit really and substantially involves a dispute or controversy as to the effect or construction of some law of the United States. Water Co. v. Keyes, 96 U. S. 199; Starin v. City of New York, 115 U. S. 248, 6 Sup. Ct. 28; City of Shreveport v. Cole, 129 U. S. 36, 9 Sup. Ct. 210; City of New Orleans v. Benjamin, 153 U. S. 411, 14 Sup. Ct. 905. "A case," said Chief Justice Marshall in Cohens v. Virginia, 6 Wheat. 379, "may truly be said to arise under the constitution or a law of the United States, whenever its correct decision depends upon the construction of either," or when "the title or right set up by the party may be defeated by one construction of the constitution or law of the United States, or sustained by the opposite construction." Osborn v. Bank, 9 Wheat. 822. And the recent decisions are to the effect that jurisdiction must be shown by the complainant's statement of his own case, and to no extent depends upon the defense that the defendant may interpose. Montana Ore-Purchasing Co. v. Boston & M. Consol. Copper & Silver Min. Co., 93 Fed. 274; State of Tennessee v. Union & Planters' Bank, 152 U. S. 454, 14 Sup. Ct. 654; Chappell v. Waterworth, 155 U. S. 102, 15 Sup. Ct. 34; Postal Tel. Cable Co. v. State of Alabama, 155 U. S. 482, 15 Sup. Ct. 192; Land Co. v. Brown, 155 U. S. 488, 15 Sup. Ct. 357; Railway Co. v. Skottowe, 162 U. S. 490, 16 Sup. Ct. 869. It is clear, therefore, that unless the complainant in the present case has shown, by its statement of its own cause of action, that the determination thereof necessarily involves the construction or effect of some law of the United States, it fails to present a federal question.

Now, looking at the bill, it is seen that the complainant alleges its ownership and possession of a certain 80-acre tract of land, situated within a certain mining district in Fresno county, Cal., upon which three several mining locations were made by the predecessors in interest and grantors of the complainant, after the discovery by them of petroleum thereon, and at a time when the land was open to such respective and successive locations. It is alleged that prior to the year 1890 the quarter section of land of which the 80-acre tract forms part was surveyed and subdivided and marked in accordance with the laws of the United States, and at that date was subject to exploration, entry, and purchase under its mining laws; that prior to May 2, 1890, a mining district called "Coalinga Mining District" was organized and established in Fresno county, Cal., pursuant to law, embracing, among other lands, the whole of the quarter section referred to, which district has ever since existed; that on January 1, 1893, the quarter section of land referred to continued subject to exploration, location, claim, and purchase under the mining laws, and that on that day certain named persons, to wit, W. H. H. Hart, C. M. Wells, J. E. Wilson, H. G. Cates, George L. Arnold, M. T. Allen, J. A. Anderson, and J. A. Anderson, Jr., each of whom was a citizen of the United States,

and of lawful age, discovered valuable deposits of petroleum thereon, and associated themselves together for the purpose of locating, claiming, holding, and working, in good faith, the said quarter section as a placer mining claim, and did on that date, as an association of persons, distinctly mark the claim on the ground with monuments of stone, placing one on each of the four corners, with stakes or monuments between the corners at points of prominence, and in such manner that the boundaries of the claim were distinctly marked on the ground, and could be readily traced both with reference to the monuments erected by the locators, as well as by reference to the permanent monuments established by the government in its survey of the land; that upon the same day the locators posted upon the tract so located a notice of location thereof, signed by them, which notice contained the date of location, a description of the claim by reference to the monuments and by reference to its legal government subdivision, and designated the claim as the "Arnold Placer Mining Claim," and on the same day duly recorded the notice in the mining records of Coalinga mining district; that the location was made in all respects as required by the laws of the United States and of the state of California, and by the rules, regulations, and customs of the mining district in which the claim is situated; that on December 29, 1894, in accordance with the requirements of the act of congress of July 18, 1894, providing for the suspension of assessment work on mining claims for the year 1894, the locators mentioned caused to be filed in the records of the Coalinga mining district a notice stating that they claimed the mining claim mentioned, and that they intended in good faith to hold and work it; that since the year 1894 the locators of that claim, and their successors in interest, have continued to claim the quarter section mentioned, as a placer mining claim, but failed to perform sufficient labor thereon to constitute the annual labor required upon placer mining claims under the mining laws of the United States for the year 1895; that the said locators of the Arnold mining claim conveyed their interest therein to the complainant prior to the commencement of this suit; that on January 1, 1896, the quarter section of land mentioned and described in the bill was public land of the United States, subject to exploration, location, purchase, and claim under the mining laws, and that on that date certain named persons, to wit, W. F. Fitzgerald, C. M. Wells, J. E. Wilson, H. G. Cates, George L. Arnold, M. T. Allen, J. A. Anderson, and J. A. Anderson, Jr., each of whom was a citizen of the United States and of lawful age, discovered valuable deposits of petroleum upon the said land, and on that day associated themselves together for the purpose of locating, claiming, holding, and working in common the said quarter section of land as a placer mining claim, and did on that day, as an association of persons, distinctly mark the claim on the ground with monuments of stone, one on each of the four corners of the location, with stakes or monuments between the corners, at points of prominence, and in such manner that the boundaries of the claim were distinctly marked on the ground, and could be readily traced both with reference to the

monuments erected by the locators as well as by reference to ·the permanent monuments established by the government in its survey of the land; that upon the same day the locators posted upon the land a notice of its location, signed by them, which notice contained the date of location, a description of the claim by reference to the monuments and by reference to its legal government survey, and designated the claim as the "Mars Placer Mining Claim," and on the same day duly recorded the notice in the mining records of the district; that said location of January 1, 1896, was made in all respects as required by the laws of the United States and of the state of California, and by the rules, regulations, and customs of the mining district, and that on March 4, 1896, the notice of location was duly recorded in the office of the recorder of Fresno county, in the Book of Mining Claims; that on January 1, 1896, the said locators entered into the peaceable and exclusive possession and enjoyment of the lands so located, and that they and their grantees have ever since remained in its exclusive possession, enjoyment, and use; that by virtue of the laws of the United States, and of the local regulations of the mining district formed pursuant thereto, and especially by virtue of the provisions of an act of congress approved February 11, 1897 (29 Stat. 526), relating to the location of petroleum lands as placers, said locators and their grantees held, and were entitled to hold, the absolute, exclusive, and sole occupancy and right of possession and enjoyment of the claim from January 1, 1896, down to and including the 31st day of December, 1898, and forever thereafter, upon complying with the laws of the United States; that from January 1, 1896, to December 31, 1898, inclusive, the quarter section of land mentioned and described in the bill was reserved from entry, location, or claim by any adverse person or persons, and during that period to the present time has been possessed and claimed by the said locators and their grantees; that after the said location of January 1, 1896, a decision was made by the then secretary of the interior, by which it was determined that lands containing deposits of petroleum were not mineral in their character, within the meaning of the acts of congress relating to location of mineral lands, and were not subject to location as mineral lands, and that by the act of congress approved February 11, 1897, petroleum lands were declared to be subject to entry and location under the mineral laws of the United States relating to placer claims, and that it was thereby further enacted "that lands containing such petroleum, or other mineral oil, which have heretofore been filed upon, or claimed, ·or improved, as mineral, but not yet patented, may be held and patented under the provisions of this act, the same as if such filing, claim, or improvement were subsequent to the date of passage hereof" (29 Stat. 526); that by reason of said decision of the secretary of the interior, and of the act of congress of February 11, 1897, it appeared to the association of locators mentioned to be uncertain whether or not it was necessary to relocate the said mining ground after the passage of the act of February 11, 1897, in order to perfect their prior location, and that the said association, without any intention of abandoning the said

mining location or any rights thereunder, did on the 26th day of May, 1898, cause and procure W. F. Fitzgerald, C. M. Wells, J. E. Wilson, H. G. Cates, George L. Arnold, M. T. Allen, J. A. Anderson, and J. A. Anderson, Jr., each of whom was a citizen of the United States, and of lawful age, in behalf of the association to enter upon and relocate the north half of the said quarter section, and that they, discovering thereon petroleum, did, pursuant to such agreement, locate the said north half of the quarter section described, as a placer mining claim, under the name of "Manila Mining Claim," and did on that day mark out the boundaries of the claim distinctly on the ground by erecting monuments and stakes at the four corners of the location, and monuments at short intervals on the side lines between the corner monuments, at prominent points, and so that the boundaries could be readily traced on the ground, and posted thereon a notice of location which set forth the names of the locators, the date of the discovery, the name of the claim, and its description, by reference to the monuments and also to its legal subdivision, which notice was on the 28th day of May, 1898, recorded in the office of the county recorder of the county in which the claim is situated; that within 60 days after such discovery the complainant or its predecessors took possession of the claim, and caused labor to be performed thereon, and dug a tunnel to a depth of about 26 feet for the purpose of developing and bringing to the surface the oil therein, expending in the work a sum in excess of $50, and thereafter the complainant caused to be filed with the county recorder of the county in which the claim is situated an affidavit showing such performance of work upon the claim, and the value on account thereof, and that the locators of the Manila mining claim and their successor, the complainant herein, have at all times fully complied with the laws of the United States and with the law of the state, and local regulations not in conflict therewith, in locating and possessing the said Manila mining claim; that the discoverers and locators of said Mars mining claim, located on January 1, 1896, and the said locators of the said Manila mining claim, located on May 26, 1898, did before the commencement of the present action convey all their right, title, and interest therein to the complainant, and that since the conveyance thereof the complainant has continued in the possession of the ground, up to the time of the commencement of this suit; that at no time since January 1, 1893, except on January 1, 1896, when the said land was located by the complainant's predecessors, has the said quarter section been open or subject to exploration, location, or claim by any person or persons other than the complainant and its predecessors in interest.

The bill then alleges that, notwithstanding the discovery, location, claim, occupancy, development, and work of the complainant and its predecessors in interest, and well knowing the facts in reference thereto, the defendants and their grantors during the years 1897 and 1898 unlawfully and illegally caused notices to be posted upon the north half of the quarter section mentioned, and to be recorded in the mining records of the Coalinga mining district, or in the county recorder's office of Fresno county, Cal., claiming to

locate said north one-half of the said quarter section, or portions thereof, as placer mining ground, while the said land was not open to exploration, entry, or claim under or pursuant to the said pretended location, but was under the exclusive control and in the peaceable possession of the complainant and its predecessors in interest, and that each of the defendants claims that he has the right to locate and hold the said land; or some part thereof; that none of the defendants have completed any location of any of the said land, and have not complied with the laws of the United States or of the state of California, or with the local regulations in reference thereto, in any respect, and have not performed work or labor thereon, or made any proof thereof, as required by such laws and regulations; that said pretended location notices recorded by the defendants constitute clouds upon the title of the complainant to the premises in question, and that said pretended claims prevent and interfere with the full enjoyment and use by the complainant thereof; that the defendants threaten and intend to, and, unless restrained by this court, will, go upon the said premises and interfere with the peaceful enjoyment thereof by the complainant, and will bore wells and extract and take away mineral oil therefrom, to the irreparable injury of the complainant; that the bill is brought to prevent a multiplicity of suits; that defendants have made and still make repeated and successive claims to the said premises, or portions thereof, by posting repeated and successive notices of locations, of the character and in the manner above mentioned, sometimes upon one part of the said premises and sometimes upon another; that sometimes some of the defendants, and sometimes others, post such pretended notices covering and claiming parts of said north half of the said quarter section of land, and other defendants post pretended notices claiming parts or other portions thereof, so that full and complete relief can only be granted to the complainant in this suit; that the amount in controversy exceeds in value the sum of $5,000, exclusive of interest and costs; and that the value of the petroleum in the said land claimed by the defendants exceeds in value the sum of $5,000.

The foregoing is a full synopsis of the allegations of the bill. In all this there is nothing whatever to show that the proper determination of the suit will necessarily involve the construction or effect of any law of the United States. Indeed, there is in all this nothing whatever to show that there is any dispute between the complainant and the defendants in respect to the construction or effect of any law of the United States. It may very well be that the sole defense that the defendants may interpose to the suit of the complainant may consist of a denial that there was ever any discovery upon the disputed premises of petroleum by any of the predecessors in interest and grantors of the complainant, or that the land in question in fact contains any petroleum, or that either of the locations under which the complainant claims was ever properly marked upon the ground or posted or recorded so as to constitute a valid mining location. However this may be, and whatever the defense may be, it is, I think, very clear that the bill falls far short of showing that

the proper determination of the suit will necessarily involve the construction or effect of any law of the United States, or that there is in fact any dispute between the respective parties in respect to the construction or effect of any such law. For this reason I am of the opinion that the bill fails to show jurisdiction in this court over the cause of action, and accordingly an order will be entered sustaining the demurrer, with leave to the complainant to amend within the usual time, if it shall be so advised.