**ALLSTATE INSURANCE COMPANY and National Cash Register Company**

v.

**LUMBERMENS MUTUAL CASUALTY COMPANY and Leo A. and Mary P. T. Archambault.**

**Civ. No. 8843.**

United States District Court
D. Connecticut.
April 6, 1962.

Piling, Lumber and Ties, 78 M.C.C. 803 (Div. 1, 1958).

Howard, Kohn, Sprague & FitzGerald, by John R. FitzGerald, Hartford, Conn., for plaintiff.

Schatz, Weinstein & Seltzer, by Edward Seltzer, Hartford, Conn., for defendant.

BLUMENFELD, District Judge.

### RULING ON

(1) MOTION OF NATIONAL CASH FOR PERMISSION TO AMEND

(2) MOTION OF ALLSTATE TO WITHDRAW

(3) MOTION OF LUMBERMENS TO DISMISS

(4) MOTION FOR SUMMARY JUDGMENT

In this action for a declaratory judgment, brought originally by Allstate Insurance Company [Allstate] and National Cash Register Company [National Cash], as parties plaintiff, against Lumbermens Mutual Casualty Company [Lumbermens] and Leo A. and Mary P. T. Archambault [Archambaults], deficiencies in the allegations relating to the citizenship of the corporate parties presented a jurisdictional obstacle to consideration of the plaintiff's motion for summary judgment, which the court called to the attention of counsel, and thereby precipitated a series of procedural maneuvers which has already necessitated rulings on four contested motions. Three more motions must be disposed of before we get back to the motion for summary judgment which first brought this case before the court. In the course of subsequent efforts to supply the omitted allegations, it appeared that both Allstate and Lumbermens were citizens of the State of Illinois. The more serious defects of lack of diversity jurisdiction which this created provoked a motion by Lumbermens to dismiss for lack of jurisdiction. A day later, the plaintiff Allstate was joined by National Cash in a motion to permit the withdrawal of Allstate as a party plaintiff, in order to cure the lack of diversity of citizenship.

*Motion of National Cash for Permission to Amend*

An orderly approach to the determination of the question of this court's jurisdiction requires that the motion of National Cash for permission to amend be considered first. The object of that amendment is to supply the allegations previously omitted, setting forth the principal place of business of Lumbermens. At the argument upon this motion, the defendants admitted the truth of these new allegations. 28 U.S.C. § 1653, provides: "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." See also: Niagara Fire Ins. Co. v. Dyess

Furniture Co., 5 Cir., 1961, 292 F.2d 232, 233.

This motion is granted.

### Motion of Allstate to Withdraw

█ The next question is presented by Allstate's motion for permission to withdraw as a party plaintiff. It was pointed out in this court's prior Order on the Question of Jurisdiction Preliminary to Ruling on Plaintiff's Motion for Summary Judgment, filed December 12, 1961, that, if the citizenship of the parties were to be as the pleadings disclosed it to exist, there would not be diversity of citizenship between Allstate and Lumbermens (because both are citizens of Illinois) and jurisdiction of the court would fail. Eastman Kodak Company v. Velveray, S.D.N.Y., 1959, 175 F.Supp. 646; 28 U.S.C. § 1332. Where, because of a joinder of proper though not indispensable parties, there is no jurisdiction over the controversy as a whole, the court may permit dismissal of a party and thereby establish jurisdiction over the separate controversy remaining with retroactive effect. Cf. States v. John F. Daly, Inc., D.C.E.D.Pa., 1951, 96 F.Supp. 479; Kerr v. Compagnie De Ultramar, 2 Cir., 1958, 250 F.2d 860, 864; Rule 21, F.R.Civ.P. 28 U.S.C.[1] Insofar as this is a suit by Allstate as a party plaintiff, the action of Allstate only is dismissed for lack of jurisdiction. This disposes of Allstate's motion for permission to withdraw.

### Motion of Lumbermens to Dismiss

Apparently anticipating that the court would be required to order the dismissal of Allstate, Lumbermens also attacked the court's jurisdiction by contending that National Cash had been made a party by collusion. This contention emanated only from the brief and argument in support of defendant Lumbermens request for admissions of facts, calculated to import some facts into the record which it assumed had a significant bearing in support of its claim of collusion. When to avoid further prolongation of the determination of this issue the court indicated it would regard the defendant's motion as embracing a claim that National Cash had been made a party collusively to invoke the jurisdiction of this court in violation of 28 U.S.C. § 1359, Lumbermens submitted additional requests for admission of facts related specifically to the issue of lack of control by National Cash over the conduct and prosecution of this case. The court, although it sustained objections to some of these, ruled that the parties might submit affidavits on the question of collusive jurisdiction. This has now been done. From the responses to Lumbermens requests for admission of facts by plaintiff's attorney, it now appears that this action was originally instituted by both plaintiffs through Allstate's attorney; that it was instituted by Allstate through its attorney after consultation with National Cash and with prior authority to bring this action in behalf of National Cash as a plaintiff; and that it was not instituted by Allstate through its attorney solely for the benefit of Allstate. These responses are made by the plaintiff's attorney of record, over his signature, and they are taken by the court as true. From the affidavit of the assistant general counsel of National Cash, it is found that these facts are corroborated and that National Cash is not a "mere dummy" in this litigation, that it authorized the suit, and that it has not surrendered control over it. Nothing to the contrary but argument was submitted.

██ National Cash seeks a declaration of its own rights to the benefits provided under an auto liability insurance policy issued to Joseph D. Gary. It stands in its own shoes. It has its own interests. Its interest is based upon its

---

1. Rule 21, F.R.C.P.—MISJOINDER AND NON-JOINDER OF PARTIES "Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately."

claim that it is an insured under that policy. It is a defendant in a state court action which seeks to impose liability upon it for injuries inflicted upon the Archambaults as a result of Gary's operation of his automobile, described in the policy issued to him by Lumbermens. The fact that Allstate may have an interest [2] that will be best served by a successful declaration of National Cash's claimed right does not establish collusion. A similar argument was rejected in Wheeler v. City & County of Denver, 229 U.S. 342, 351, 33 S.Ct. 842, 845, 57 L.Ed. 1219 (1913), where the Supreme Court held, to establish collusive jurisdiction "mere unity of interest or differences in its degrees, is not enough, there must be an illegal purpose." Furthermore, the fact that a party plaintiff has been solicited to bring suit and also has been indemnified against liability for costs and fees is not enough to make a case collusive so as to deprive a federal court of jurisdiction. Wheeler v. City & County of Denver (supra); Matthies v. Seymour Mfg. Co., D.C.Conn., 1958, 23 F.R.D. 64, 83–84, rev'd on other grounds 2 Cir., 270 F.2d 365; First Congregational Church & Soc. of Burlington, Iowa v. Evangelical & Reformed Church, S.D.N.Y., 1958, 160 F.Supp. 651, 661–662; compare, American Motorists Ins. Co. v. Weir, 132 Conn. 557–562, 46 A.2d 7 (1946). There is no showing that National Cash "has been improperly or conclusively made" a party "to invoke the jurisdiction of such court." 28 U.S.C. § 1359. Jurisdiction of this court has not been collusively obtained.

The defendant Lumbermens' motion to dismiss for want of jurisdiction is denied.

### The Motion for Summary Judgment

This case has now become qualified for disposition by summary judgment. The following facts are uncontroverted:

1. The plaintiff National Cash is a corporation organized and existing under the laws of and having its principal place of business in the State of Maryland.

2. The defendant Lumbermens is a corporation organized and existing under the laws of and having its principal place of business in the State of Illinois.

3. The defendants Leo A. and Mary P. T. Archambault are citizens of the State of Connecticut.

4. On December 4, 1959, Joseph D. Gary was insured under an auto liability policy YK 826–203 covering an automobile being operated by him on December 5, 1959 when it was involved in a collision with another automobile resulting in injuries to Leo A. and Mary P. T. Archambault.

5. The Archambaults have filed a suit in the Connecticut Superior Court for New London County against National Cash as sole defendant therein in which it is alleged that Joseph Gary was acting as the agent, servant or employee within the scope of his agency or employment of National Cash at the time of the collision. It also alleges that the Archambaults' injuries were caused by the negligent operation by Gary of his automobile and claims damages for Leo A. Archambault in the amount of $25,000 and for Mary P. T. Archambault in the amount of $10,000.

6. The insurance policy issued to Gary contains the following provisions:

"Lumbermens Mutual Casualty Company agrees with the insured * * * to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

"(Bodily injury and property damage) arising out of the ownership, maintenance or use of the owned automobile * * * and the company shall defend any suit alleging such bodily injury or property damage in seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit

2. Allstate had issued a policy of automobile liability insurance containing an employers non-ownership liability clause to National Cash which provided excess insurance protection to National Cash over any other valid and collectable insurance. It sought a declaration that Lumbermens' policy to Gary provided primary insur-

are groundless, false or fraudulent * * *"

7. The policy also provides that the following among others are "Persons Insured":

"(a) with respect to the owned automobile,

"(1) the named insured and any resident of the same household, * * *

"(c) any other person or organization legally responsible for the use of

"(1) an owned automobile * * * provided the actual use thereof is by a person who is an insured under (a) * * * with respect to such owned automobile * * *"

8. The policy names National Cash as Gary's employer.

9. The policy was issued to Gary in Waterford, Connecticut where he lives and where his car was principally garaged, by Walter T. Camp & Son, the Lumbermens' resident agent at Norwich, Connecticut, by whom it was countersigned there before it become valid.

National Cash seeks a judgment declaring that the defendant Lumbermens is required to defend the state court action. The Lumbermens' contention is that it must first be determined at a trial on the merits that National Cash, the defendant in that law suit, was "legally responsible for the use" of the automobile driven by Gary before Lumbermens becomes obligated to defend National Cash.

■ When the jurisdiction of this court is based upon diversity of citizenship, it sits as another court of the State of Connecticut because "for the same transaction the accident of a suit by a non-resident litigant in a federal court * * * a block away should not lead to a substantially different result." Guaranty Trust Co. of N. Y. v. York, 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Therefore, it is required to determine what law is applicable in ac-

cordance with the law of Connecticut. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

■ The highest court of the State of Connecticut in at least two cases has declared what its law is with respect to the extent of an insurer's duty to defend under policy provisions similar to those to be construed here. There is no reason to doubt what it would rule to be its law. Cf. Bernhardt v. Polygraphic Co. of America, 350 U.S. 198, 205, 76 S.Ct. 273, 100 L.Ed. 199 (1956); Strubbe v. Sonnenschein, 2 Cir., 1962, 299 F.2d 185. Connecticut has joined with the great weight of authority in support of the rule that an insurer's duty to defend a groundless suit is tested by the allegations of the complaint. Smedley Co. v. Employers Mutual Liability Ins. Co., 143 Conn. 510, 123 A.2d 755 (1956); Connecticut Company v. Mongillo, 144 Conn. 200, 128 A.2d 528 (1956).

■ Where the language in Lumbermens' policy setting forth the scope of its duty to defend reads, "* * * and the company shall defend any suit alleging such bodily injury or property damage", "such" injuries refer to those "arising out of the ownership, maintenance or use of the owned automobile." The suit pending in the state court alleges bodily injuries arising out of the use of an automobile by Gary. There can be no doubt that damages because of personal injury and property damage, which arose out of Gary's own use of his own automobile, are payable under the terms of this policy. If there is any liability upon National Cash, Gary is primarily liable; and National Cash, by application of the doctrine of respondeat superior, is secondarily liable. National Cash is described as the employer of Gary and "* * * legally responsible" for Gary's acts done within the course and scope of his employment. If National

ance protection to National Cash against the claims asserted by the Archambaults and that its policy afforded only excess or secondary coverage. For a case in-

volving a similar situation see generally Citizens Mutual Auto. Ins. Co. v. Liberty Mutual Ins. Co., 6 Cir., 1959, 273 F.2d 189.

Cash is required to pay damages, it will be able to obtain reimbursement of that loss from Gary. Bailey v. Bussing, 37 Conn. 349, 352 (1870); Fidelity & Casualty Co. of New York v. Jacob Ruppert, Inc., 135 Conn. 307, 63 A.2d 849 (1949); Restatement of the Law, Restitution § 96, p. 418. The company will be compelled to pay in either event.[3] The defendant does not deny that it is obligated to pay all sums which National Cash may become legally obligated to pay in the event of a judgment against it based upon the allegations in the suit now pending. Nevertheless, it contends it has no duty to defend that suit until after a trial on the merits, either in that suit or in this one, establishes the legal responsibility of National Cash. There is no force in the mechanical argument that because Lumbermens will not be obligated to pay the Archambaults until the legal responsibility of National Cash to pay them is established in a court trial; and, since this is the same legal responsibility that will qualify National Cash as an insured under the policy, therefore, the same method used to test the legal responsibility of National Cash to the Archambaults must be used in order to activate the defendant's duty to defend National Cash. The relationship between National Cash and the Archambaults is different from that between National Cash and Lumbermens, and the foundation of the rights and duties created by these relationships are different. The obligation of National Cash to the Archambaults is founded upon the general law of respondeat superior; the obligation to defendant National Cash is founded upon the terms of Lumbermens' policy. Connecticut courts have expressly re-

fused to recognize the same argument made by Lumbermens here when urged by liability insurers in other cases. Thus, it was held in Smedley Co. v. Employers (supra), where O'Sullivan, J. stated 143 Conn. at pp. 516, 517, 123 A.2d at pp. 758, 759:

"The defendant's duty to defend, however, has a broader aspect than its duty to indemnify. Goldberg v. Lumber Mutual Casualty Ins. Co., 297 N.Y. 148, 154, 77 N.E.2d 131. The distinction between liability and coverage should be kept in mind. The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability. Grand Union Co. v. General Accident, Fire & Life Assurance Corporation, 254 App.Div. 274, 280, 4 N.Y.S.2d 704, aff'd. 279 N.Y. 638, 18 N.E.2d 38; Socony-Vacuum Oil Co. v. Continental Casualty Co., 144 Ohio St. 382, 392, 59 N.E.2d 199. It necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint. 8 Appleman, Insurance Law & Practice, § 4683. Hence, if the complaint sets forth a cause of action within the coverage of the policy, the insurer must defend. Leonard v. Maryland Casualty Co., 158 Kan. 263, 267, 146 P.2d 378; Springfield Township v. Indemnity Ins. Co., 361 Pa. 461, 464, 64 A.2d 761. On

3. A successful defense of the estate of Gary would result in no liability against either it or National Cash. Lumbermens nowhere suggests that it would not defend Gary's Admr. if he were also a defendant in the suit. See: Home Indemnity Co., N. Y. v. Lechner, D.C.S.D. Calif., 1961, 191 F.Supp. 116. In the absence of any explanation for the omission of Gary's Admr. (Gary is now deceased) as a party defendant in the state court suit, one might speculate that the

Archambaults seek to avoid (1) the adverse effect in that suit of the Dead Man Statute, Conn.Gen.Stats., § 52–172 (Rev. of 1958), which would permit any premortem statement of his with respect to that action to be admitted into evidence; and (2) the necessity of overcoming the presumption provided by Conn. Gen.Stats., § 52–114 (Rev. of 1958), that he was exercising due care at the time of the accident.

the other hand, if the complaint alleges a liability which the policy does not cover, the insurer is not required to defend. Fessenden School, Inc. v. American Mutual Liability Ins. Co., 289 Mass. 124, 130, 193 N.E. 558." See also: Connecticut Co. v. Mongillo (supra).

The duty is both to defend suits *and* to pay judgments payable under the policy. Even payment of the full amount of the policy limits has been held not to relieve an insurer of its additional obligation to defend such suits. American Casualty Co. of Reading, Pa., v. Howard, 4 Cir., 1951, 187 F.2d 322. The common interest between National Cash and Lumbermens to establish nonliability to the Archambaults suggests the cooperation between them, which the insurance policy demands,[4] to oppose the Archambaults whose interest is to defeat nonliability. The company's contention maneuvers National Cash into an adversary position which forces it into the dilemma of choosing between the least prejudicial of these conflicting interests. This is an undue burden to thrust upon it. To hold otherwise would penalize it for a full and frank disclosure. See: Goldberg v. Lumber Mutual Cas., 1947, 297 N.Y. 148, 77 N.E.2d 131. See generally: "Insurers Duty to Defend" (1955), 68 Harvard Law Review 1436.

The principle that the existence of a duty to defend is determined by measuring the allegations of a complaint against the provisions of the policy is as broad as it is long. The policy covers certain defined classes of risks, and it covers certain defined classes of persons. If the allegations of any suit "seeking damages which are payable under the terms of the policy" bring persons, conduct, risks, injuries and damages within the terms of this insurance policy, the Lumbermens may not dispute those allegations to avoid its duty to defend. The Company could hardly have armored these allegations more impregnably than it did by its agreement to defend any suit " * * * even if any of the allegations are groundless [without reason], false [untrue] or fraudulent [intentionally deceitful] * * * " In teaching the rationale behind the rule, the clear distinction between groundless suits and those not within the coverage of a policy was enlightened by Chief Judge Learned Hand in the leading case of Lee v. Aetna Casualty & Surety Co., 2 Cir., 1949, 178 F.2d 750, at pp. 751, 752, 753:

> "This language means that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury 'covered' by the policy; it is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the insured, or from any one else, which indicates, or even demonstrates, that the injury is not in fact 'covered.' The insurer has promised to relieve the insured of the burden of satisfying the tribunal where the suit is tried, that the claim as pleaded is 'groundless'."

The fact that limits exist in no way affects application of the expressed formula within those limits. There may be groundless suits within the terms of coverage stated in the policy or groundless suits not within the terms of coverage; and, after raising the question, by posing a case where the allegations were broad enough to permit recovery for injuries caused by an event beyond the terms of the policy, Chief Judge Learned Hand at p. 752 observed:

> "Whether the insurer ought to defend such an action at least until it appears that the claim is not covered by the policy is not free from doubt; but it seems to us that we should resolve the doubt in favor of the insured. * * * We do not believe that, had the question been presented to the parties in advance, they would have agreed that the

4. "The insured shall cooperate with the company and upon the company's request * * * assist in * * * securing and giving evidence * * * in connection with the subject matter of his insurance."

promise to defend did not include all occasions in which the insurer eventually becomes liable to pay. * * * When, however, as here, the complaint comprehends an injury which may be within the policy, we hold that the promise to defend includes it. Finally, if there be any ambiguity in the language of the policy, since the choice is between imposing the burden of the defence upon the insurer or the insured, the canon contra proferentem must prevail, especially as the case involves construing an insurance policy."

Connecticut law is in accord:

"It is here a settled rule that in the construction of insurance policies 'when the words are without violence, susceptible of two interpretations that which will sustain his claim and cover the loss must, in preference, be adopted.' Dickinson v. Maryland Casualty Co., 101 Conn. 369, 379, 125 A. 866, 869, 41 A.L.R. 500; Elberton Cotton Mills, Inc. v. Indemnity Ins. Co., 108 Conn. 707, 710, 145 A. 33, 62 A.L.R. 926; Tomasetti v. Maryland Casualty Co., 117 Conn. 505, 507, 508, 169 A. 54. It is a well-settled rule in the construction of insurance policies, that when a policy is 'so framed as to leave room for two constructions, the words used should be interpreted most strongly against the insurer. This exception rests upon the ground that the company's attorneys, officers, or agents prepared the policy, and it is its language that must be interpreted.' Rinaldi v. Prudential Ins. Co., 118 Conn. 419, 423, 172 A. 777, 779." King v. Travelers Ins. Co., 123 Conn. 1, 4–5, 192 A. 311, (1937).

It is hardly necessary to comment that an insurance company assumes these risks and obligations from motives of business gain. It surely calculates the cost of extending all the benefits of the policy to insureds other than those named, including those "legally respon-sible". The policy clearly states: "The insurance afforded under Part I applies separately to each insured against whom claim is made or suit is brought * * * "

Testing the defendant's contention by applying it in a few situations demonstrates that it is not workable. For, as stated in Bloom-Rosenblum-Kline Co. v. Union Indemnity Co., 1929, 121 Ohio St. 220, 167 N.E. 884:

"The contract of the company does not contemplate that its duty arises subsequent to the trial of such case and a final determination of the question of the liability of the assured. This agreement to make the defense on behalf of the assured whenever a suit is brought against it to enforce such claim for damages is a valuable provision of the policy, but it would have little value, and would be rendered almost meaningless, if the duty of the company with respect thereto did not arise when an action was brought against the assured based upon a claim of injury by an automobile covered by such policy."

A literal acceptance of the defendant's contention would make a court trial an indispensable requirement to establish its duty to defend anyone "legally responsible" for the operation of the insured vehicle, thus imposing a great burden on the judiciary to impress its stamp of "legality" upon what the insurance company should be able to decide administratively for itself. Apart from the doubt as to whether a determination of "legally responsible" here would be res judicata against the state court plaintiffs Archembaults, who are not in any adversary position on the issue of Lumbermens' duty to defend (they probably could not care less), having admitted all allegations except that they plead lack of knowledge as to whether Lumbermens has been requested to and has refused to defend, they should not be required to try their case piece-meal. Doby v. Brown, 4 Cir., 1956, 232 F.2d 504, 506, or before two separate tribunals. National Cancer Hospital of America v. Webster, 2 Cir., 1958, 251 F.2d 466, 468; H. J.

Heinz Co. v. Owens, 9 Cir., 1951, 189 F.2d 505, 509.

Few cases are to be found on the precise issue here. Neither counsel have furnished any to the court. It was squarely held in Standard Surety & Casualty Co. v. Metropolitan Casualty Co., Ohio App., 67 N.E.2d 634, that the question of whether one is "legally responsible" is to be measured by the allegations of the complaint of the injured party for the purpose of determining whether a duty to defend exists. That court distinguished Southern Underwriters v. Dunn, 5 Cir., 1938, 96 F.2d 224, where an opposite result was reached, upon the basis of a formal stipulation to similar operative facts, on the ground that that court had emphasized it could look only to "the facts stipulated" and to "solemn judicial admissions" of the parties which affirmatively established lack of legal responsibility, and was, therefore, justified in disregarding the allegations in the undefended suit which spelled out legal responsibility on a theory of respondeat superior. This is narrow ground on which to base a distinction and one not likely to be presented to a court for testing in the future. Butler v. Maryland Casualty Co., D.C.E.D.La., 1956, 147 F. Supp. 391 also holds that the defendant in a suit against him for damages must first show that he was, in fact, an assured, named or omnibus, under the policy before an insurer becomes obligated to defend him. Although Butler may be differentiated because there the "additional insured" sought the protection of the policy for the consequences of his own acts, instead of for those of the named insured, as is the case here, the court's determination of what constitutes the basis of insurer's duty to defend is also contrary to that reached in Standard Surety & Casualty Co. v. Metropolitan Casualty Co. (supra).

In the face of these conflicting views, this court will rely upon the well established rule that the existence of a duty to defend is determined by measuring the allegations of a suit against the terms of the insurance policy.

 As applied here, the state court suit naming National Cash as a defendant and seeking damages against it for injuries caused by Gary's operation of his vehicle alleges that Gary was then acting as National Cash's employee within the course and scope of his employment. Since this is tantamount to an allegation that National Cash is "legally responsible" for Gary's alleged acts, the defendant Lumbermens is under a duty to defend National Cash in that suit.

No declaration of Allstate's correlative rights or obligations to any of the parties can be made. It has been dismissed as a party for lack of jurisdiction. Judgment may enter accordingly, and also for the defendants Archambaults to recover their costs from the plaintiff Allstate.

Judgment may enter that Lumbermens is required under its Family Automobile Policy YK 826–203–X issued to Gary to defend National Cash in the suit No. 27375 by Archambaults against National Cash now pending before the Superior Court for New London County and for National Cash's costs against Lumbermens.