87 N.J. Super. 107 (1965)
208 A.2d 176
TRAVELERS INSURANCE COMPANY AND KOWALSKY'S EXPRESS SERVICE, A NEW JERSEY CORPORATION, PLAINTIFFS,
v.
BRYANT W. TYMKOW, WALTER M. TYMKOW, NATIONWIDE INSURANCE COMPANY, AND ALICE DUNCAN BROOKS, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided March 5, 1965.
*108 Mr. Burchard V. Martin for plaintiffs (Messrs. Taylor, Bischoff Neutze & Williams, attorneys).
Mr. John A. Fratto for defendants Bryant W. Tymkow, Walter M. Tymkow and Nationwide Insurance Company (Messrs. Bleakly, Stockwell & Zink, attorneys).
WICK, J.S.C.
This is an action for declaratory judgment initiated by plaintiffs Travelers Insurance Company (hereinafter Travelers) and Kowalsky's Express Service (hereinafter Kowalsky) for a determination of their duty as well as that of defendant Nationwide Insurance Company (hereinafter Nationwide) to defend and indemnify certain alleged insureds in an action now pending before the United States District Court for the District of New Jersey.
*109 The basic facts of this case, which are not in dispute, indicate that on May 10, 1962 Bryant W. Tymkow was operating a tractor-trailer owned by Walter M. Tymkow. This vehicle was in a collision on the Walt Whitman Bridge ramp leading to the Black Horse Pike, with an automobile owned and operated by Alice Duncan Brooks. At the time of the accident Bryant W. Tymkow was returning from Plymouth Meeting, Pennsylvania, with a load of lime he had purchased at the request of Walter M. Tymkow. He was on the business of Walter M. Tymkow and was not on any business for Kowalsky, but the vehicle being driven by Bryant W. Tymkow did have on its side an I.C.C. registration certificate bearing number 29919 and Kowalsky's name. From time to time Walter M. Tymkow did do hauling in interstate commerce for Kowalsky on a truck-lease basis. The I.C.C. plate had been placed on the vehicle in question approximately a month before the accident and had not been removed.
Nationwide issued a policy of insurance to Walter M. Tymkow, which policy was in full force and effect at the time of the accident. Travelers issued a policy of insurance to Kowalsky, which policy was in full force and effect at the time of the accident.
The complaint in the United States District Court action is against Bryant W. Tymkow, Walter M. Tymkow and Kowalsky's Express Service, jointly, severally and in the alternative, and avers that Bryant W. Tymkow negligently caused the afore-mentioned collision while acting as the agent, servant or employee of Walter M. Tymkow and Kowalsky. The complaint further alleges that the motor vehicle, at the time and place of the accident, was under lease to Kowalsky.
In testimony before this court on February 9, 1965 both Walter M. Tymkow and Bryant W. Tymkow stated that the tractor-trailer involved in the collision was not at the time under lease to Kowalsky and was not in fact on any business for him. The pretrial order in this matter, dated November 5, 1964, states in paragraph three: "The plaintiffs further aver that at the time of the said collision the vehicle was *110 being used in the business of the defendant Walter M. Tymkow, and deny that the plaintiff Kowalsky's Express Service was in any way in control of or responsible for the operation of the motor vehicle."
On October 4, 1963 a motion for summary judgment was made in the United States District Court by Kowalsky. In the brief he filed appears the following paragraph:
"On or about May 10, 1962, defendant, Bryant W. Tymkow was operating a truck other than the one specified in the aforementioned leasing agreement with Kowalsky's Interstate Commerce Commission permit plates attached thereto. He, at that time, was not using the truck on any of Kowalsky's business. Kowalsky had no knowledge of this use of plates and never consented to such a use."
With the brief was also filed the affidavit of Thomas Rocap stating, in part, as follows:
"4. At no time did defendant Kowalsky ever have a leasing agreement for the above mentioned tractor truck.
5. At no time did defendant Kowalsky ever authorize, permit, sanction or allow defendants Tymkow to remove Kowalsky's I.C.C. identification plates from a leased vehicle for use on a non-leased vehicle.
6. At no time did defendant Kowalsky ever authorize, permit, sanction or allow defendants Tymkow to utilize Kowalsky's I.C.C. identification plates except in pursuance of Kowalsky's business.
7. At the time of the accident defendants Tymkow were not engaged in the performance of any services for defendant Kowalsky and were not authorized to utilize Kowalsky's I.C.C. identification plates in the business in which they were then engaged."
Plaintiffs Travelers and Kowalsky demand judgment in this case construing the Nationwide insurance policy and declaring that said policy includes Kowalsky as an additional insured by reason of the omnibus clause, as an "organization legally responsible for the [vehicle's] use"; that primary coverage in this matter rests with Nationwide; and that Nationwide must defend the suit in the United States District Court, relieving Travelers from the duty to defend and reimbursing Travelers for costs and fees incurred as the result of the wrongful refusal of Nationwide to assume its obligations.
*111 Defendant Nationwide denies that Kowalsky is an additional insured as per the definition of insured in Nationwide's policy, and counterclaims that the full coverage in this matter rests with Travelers and that Travelers must defend the suit in the federal court, relieving it of this duty with reimbursement for costs and fees already expended.
"On facts, strikingly simple, neither complex nor conflicting, we have again the problem of an Insurer who has written the policy and taken the Assured's premium urging him to go elsewhere, tentatively if not finally, because another insurer is, or ought to, or may be, liable for the whole, half, or part a loaf. In the process the moving Insurer generally garbs itself in the appealing robes of some assured so that, casting itself in a strange role, it asserts what it so often denied that the policy should be liberally construed and, by a bare toe hold manages to make itself enough of a party to force a construction of another contract made by another insurer with another assured and which, under no circumstance, was made for its benefit, * * *.
So it is here. Coming as it does the accident and the assureds seem all but forgotten as the two Insurers match clause against clause, coverage against exclusion, claim against denial, in this battle between fortuitous adversaries." American Fidelity & Casualty Company v. St. Paul-Mercury Indemnity Company, 248 F.2d 509, 510-511 (5 Cir. 1957).
Travelers urges that the decision in the case of Danek v. Hommer, 28 N.J. Super. 68 (App. Div. 1953), affirmed 15 N.J. 573 (1954), leads to the inescapable conclusion that Kowalsky qualifies as an additional insured under the terms of the clause in the Nationwide policy which includes "any person while using the automobile and any person or organization legally responsible for the use thereof." In Danek the court stated:
"The conclusion to be drawn from these statements is that the duty to defend comes into being when the complaint states a claim constituting a risk insured against. And the duty is not abrogated by the fact that the cause of action stated cannot be maintained against the insured either in law or in fact  in other words, because the cause is groundless, false or fraudulent. Liability of the insured to the plaintiff is not the criterion; it is the allegation in the complaint of a cause of action which, if sustained, will impose a liability covered by the policy." (at p. 77)
*112 In the instant case the complaint filed by Alice Duncan Brooks in the federal court alleges that Bryant W. Tymkow negligently caused the collision while acting as the agent, servant or employee of Kowalsky. Travelers therefore contends that Kowalsky is an organization legally responsible for the use of the vehicle under the allegations of the complaint, and as such an additional insured under the Nationwide policy entitled to a defense.
But the Danek case does not settle the problem at hand. The "insured" referred to in the above quotation was the named insured under the policy. There was no question in that case whether someone was an "insured" under the definition of that term, but only the question of the extent of coverage under the other terms of the policy. The allegation of legal responsibility in the instant case is denied by everyone but Alice Duncan Brooks. The issue before this court is a novel question in this State.
Insurance Co. of the State of Pennsylvania v. Palmieri, 75 N.J. Super. 350 (Ch. Div. 1962), affirmed 81 N.J. Super. 170 (App. Div. 1963), certification denied 41 N.J. 389 (1964), did not decide this point. From the facts presented in that case, the court was able to determine that there was in fact a permissive use to qualify Palmieri as an additional insured. All of the facts in the instant case indicate that there was no legal responsibility for the use of the vehicle at the time of the collision.
New Jersey adheres to the traditional view that as between an insurer and an assured, terms of doubtful meaning are to be construed in favor of coverage. Mazzilli v. Accident & Casualty Insurance Co. of Winterthur, 35 N.J. 1 (1961). And "where the policy provision under examination relates to the inclusion of persons other than the named insured within the protection afforded, a broad and liberal view is taken of the coverage extended." Id., at p. 8.
But with insurance policies, as with any other contract, the court will broadly search for the probable common intent of the parties, in endeavoring to discover a reasonable meaning *113 in keeping with the express general purpose. Insurance Co. of the State of Pennsylvania v. Palmieri, 81 N.J. Super. 170, 179 (App. Div. 1963).
"When it comes to assaying intent, we are looking at the contract through the eyes of [the named insured] and [the insurer]. They are the parties to the contract. Of course, when the facts occur as to any one incident to give him that status, an omnibus assured is the beneficiary of the contract and for that occasion is a party to it. But his amorphous nature, the fact that never, or seldom, is his identity known or ascertainable in advance, keeps him from being a party whose `intention' as of the inception of the policy may be taken into account. He enters the initial picture only insofar as the named assured and insurer determine the circumstances under and the extent to which they mutually intend that such third persons are to be extended benefits. * * *
* * * [e]ven here it is tested from the named assured's interests and needs. And unless words in their common, plain meaning drive one to such a construction, it is hardly to be expected that in the process of determining the circumstances under which it is advantageous to him to make insurance available to others, the named assured would be establishing insurance coverage that was increasing, not decreasing, his cost or exposure, * * *." American Fidelity & Casualty Co. v. St. Paul-Mercury Indemnity Co., supra, 248 F.2d, at pp. 515-516.
Though the facts of the American Fidelity case were quite different from the instant case, the reasoning of this quotation applies here. It can certainly not have been the intention of the named assured, Tymkow, to provide insurance benefits for any and all alleged principals that an injured third party could dream up.
As stated in 7A Appleman, Insurance Law and Practice, § 4684, p. 453:
"* * * the test to be imposed is one of reason, in all events  that is, whether the defense sought is for a coverage which the insured desired to purchase and for which he paid premiums, and the ultimate determination should be one which is fair to all contracting parties."
It is not good business practice to expend money to purchase legal defense for strangers, and it cannot be the presumed intention of the named insured to have provided for the defense sought in this case. The fact that the unauthorized use of the I.C.C. plates was most likely the basis of the allegation *114 of agency in the federal court action may give rise to a law suit for damages but it does not have any bearing in the present action.
Few cases are to be found on the precise issue here. "A distinction should be borne in mind between cases where the claim both as alleged and in fact is outside the policy coverage: and the situation where the pleadings show a cause of action within the coverage, but the true facts relieve the insurer of liability. In the former case, the insurer, according to the majority rule, is relieved of its obligation to defend  in the latter, there is some conflict in the result." Appleman, supra.
In Butler v. Maryland Casualty Company, 147 F. Supp. 391 (E.D. La. 1956), the court said:
"It is true that in Louisiana, as elsewhere, the obligation to provide a defense for an assured is determined by the allegations of the petition or complaint, irrespective of the fact that the suit may be entirely groundless. But before that principle applies, it must be shown that the defendant in the personal injury action is in fact an assured, named or omnibus, under the policy. Obviously, the insurer's obligation is not to provide a defense for a stranger merely because the plaintiff alleges that the strange defendant is an assured or alleges facts which, if true, would make him so. Conversely, the insurer may not renege on its obligation to provide a defense, even for an omnibus insured, merely because the allegations in the complaint are groundless. * * * In short, allegations in the plaintiff's petition cannot create an obligation on the part of the insurer to defend where none previously existed. Unless Oakley (the defendant in the personal injury action) is shown to be an assured under the policy, named or omnibus, no obligation whatever as to him arises, either as a party to the insurance contract or as the beneficiary of a stipulation therein pour autrui." (at p. 395)
The Butler case was cited with approval by the Court of Appeal of Louisiana, First Circuit, in the case of Smith v. Insurance Company of the State of Pennsylvania, not officially reported, 161 So.2d 903 (1964), certiorari denied 246 La. 344, 164 So.2d 350 (Sup. Ct. 1964), wherein the court stated:
*115 "If the defendant is neither the named insured nor an omnibus insured there is clearly no obligation to defend regardless of the allegations of the petition and irrespective of the soundness or groundlessness of the claim asserted. To hold otherwise is to completely erase from the policy the qualifying phrase `against the insured,' contained in Clause II (a) * * *." (at p. 919)
The policy of defendant Nationwide, in the instant case, also contains the phrase "against the insured" in the paragraph which provides for defense of legal actions.
Taking another viewpoint, the court in Allstate Insurance Co. v. Lumbermens Mutual Casualty Co., 204 F. Supp. 83 (D. Conn. 1962), stated:
"Nevertheless, [insurer] contends it has no duty to defend that suit until after a trial on the merits, either in that suit or in this one, establishes the legal responsibility of National Cash. There is no force in the mechanical argument that because Lumbermens will not be obligated to pay the Archambaults until the legal responsibility of National Cash to pay them is established in a court trial; and, since this is the same legal responsibility that will qualify National Cash as an insured under the policy, therefore, the same method used to test the legal responsibility of National Cash to the Archambaults must be used in order to activate the defendant's duty to defend National Cash." (at p. 88)
A literal acceptance of the defendant's contention would make a court trial an indispensable requirement to establish its duty to defend anyone `legally responsible' for the operation of the insured vehicle, thus imposing a great burden on the judiciary to impress its stamp of `legality' upon what the insurance company should be able to decide administratively for itself." (at p. 90)
The court went on to hold in that case that the insurer owed a duty to defend when the complaint in the personal injury action alleges a "legal responsibility." The court based its decision on the case of Standard Surety & Casualty Co. v. Metropolitan Casualty Co., 67 N.E.2d 634 (Ohio App. 1945), which squarely held in favor of a duty to defend. The Butler case was brushed aside with the statement:
"Although Butler may be differentiated because there the `additional insured' sought the protection of the policy for the consequences of his own acts, instead of for those of the named insured, as is the case here, *116 the court's determination of what constitutes the basis of insurer's duty to defend is also contrary to that reached in Standard Surety & Casualty Co. v. Metropolitan Casualty Co. (supra)." (204 F. Supp., at p. 91)
The decision in the Standard Surety case distinguished the case of Southern Underwriters v. Dunn, 96 F.2d 224 (5 Cir. 1938), where an opposite result was reached. The court in the Allstate case considered that it was a narrow ground on which to base a distinction and one not likely to be presented to a court for testing in the future. However, this court is of the opinion that the instant case is on all fours with the Southern Underwriters case and that the decision in that case should be the decision here.
The suit in Southern Underwriters was for a declaratory judgment upon the claim that
"* * * because the policy obligated [insurer] `to defend in assured's name and on his behalf any suit against him seeking damages on account of injury or damage by reason of the ownership, maintenance or use of the insured automobile, even if such suit is groundless, false or fraudulent,' and there were allegations in the suits, that Dunn and Stanolind Pipe Line Company were either using the automobile or legally responsible for the use thereof, though these allegations were in this suit admitted to be wholly groundless in fact, it was the duty of appellant, under the policy, to defend those suits as to Dunn and Stanolind." (96 F.2d, at p. 225)
The defense to this claim was directed at the very point which most troubles this court.
"* * * the claim made in this suit, if sustained, would rewrite the policy, to require the insurer to defend any person whom any one might elect to sue in connection with an accident involving the truck described in the policy, though the person sued was not the `named assured,' and was not, in fact, using or legally responsible for the use of the truck, if only the plaintiff in that suit should allege that the defendant in the suit was either using or legally responsible for the use of the truck." (at p. 225)
The insurance carrier of plaintiff in the declaratory judgment suit in that case was, oddly enough, plaintiff in the *117 instant case. They now contend that what was decided 27 years ago, on almost identical facts, should not be the decision today.
It was agreed to in a stipulation, in the Southern Underwriters case, that the named insured was acting as an independent contractor at the time of the accident and was not in any way connected with Dunn or Stanolind except that his personally owned truck was loaded with their oil well pipe and casing. In the face of these admissions plaintiffs nevertheless contended that they were owed a defense. The district judge agreed, but the Fifth Circuit reversed and remanded, saying:
"We agree with appellant that this will not do. The case before us is not a suit brought on judgments obtained in the Oklahoma suits against Dunn and Stanolind determining that Dunn and Stanolind were using, or legally responsible for the use of, the truck, and were therefore covered by the policy. It is not a suit upon allegations and proof that Dunn and Stanolind are `other assureds' to obtain a declaratory judgment that they are, and that appellant must therefore defend and indemnify them. It is a suit for a declaratory judgment as to the rights of plaintiffs and the duty of defendant under the policy contract, to be determined not upon the allegations in the Oklahoma suits, but upon the facts stipulated in this one. Whether Dunn and Stanolind are `other assureds' under appellant's policy, to be defended and indemnified as such in the Oklahoma suits, is not to be determined here by either the allegations in or the hypothetical results of those suits. They are without bearing upon the duties and liability of appellant under the invoked policy. These depend alone, they are to be determined alone, by the facts stipulated and admitted here. Upon these facts, and upon the solemn judicial admissions of the plaintiffs, Dunn and Stanolind are not `assureds' under the policy; they are not named in it as such; they are not `other assureds' as `using or employing the truck, or being legally responsible for its use.' The declaration that appellant must defend the suits on behalf of Dunn and Stanolind, and must, upon the hypothesis and in the contingency named in the declaration, pay any judgment rendered against them, cannot stand. There should, under the stipulations and admissions, have been a contrary declaration." (at pp. 226-227)
There were no stipulations in the instant case, but this court does have before it the uncontroverted testimony of the Tymkows, plaintiffs' statements in the pretrial order, and the wording of the brief and affidavit used in the motion in the *118 federal court. In the face of this, the decision in this case must be the same as that in the Southern Underwriters case, i.e., on the basis of the facts and contentions before this court, we can only decide that Nationwide owes Travelers neither the duty to defend nor indemnify. This court does not now determine what its decision would be if plaintiff Nowalsky contended in this action that he was responsible for the vehicle at the time of the accident but that the facts presented indicated the contrary. Instead, the present decision is limited to its precise facts, and this court now determines that there is no duty to defend where only the complaint of the injured third party sets up responsibility and this responsibility is refuted by all other parties in interest, and by the facts and contentions before the court.
This court recognizes, as the court did in Allstate Insurance Co. v. Lumbermens Mutual Casualty Co., supra, that the determination of legal responsibility here would not seem to be res adjudicata against federal court plaintiff Alice Duncan Brooks, who is not in any adversary position on the issue of the duty to defend or indemnify, and who should not be required to try her case piecemeal or before two separate tribunals. Therefore, should plaintiff Kowalsky be determined to be "legally responsible" in the personal injury action (the likelihood of which  in face of the facts before this Court  seems minimal), plaintiff Travelers could then come before this court armed with that additional fact in an action for indemnification. However, Nationwide's duty to defend is finally determined in this present proceeding.
Based on the foregoing, the court finds no merit in the counterclaim of Nationwide, and the judgment on said counterclaim is that Travelers presently owes no duty to defendants to either defend or indemnify.